UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDERICK HEGARTY,<br><br>    Plaintiff,<br><br>v.<br><br>AT&T UMBRELLA BENEFIT PLAN NO. 1,<br><br>    Defendant.<br>_____/ | No. C-14-1976 EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket Nos. 36, 38)** |

## I. INTRODUCTION

Plaintiff Frederick Hegarty brings this action for short-term disability (STD) benefits under 29 U.S.C. § 1132(a)(1)(B), which provides civil claims against employee benefit plans governed by the Employee Retirement Income Security Act of 1974 (ERISA). Plaintiff contends that the employee benefit plan he is covered by, AT&T Umbrella Benefit Plan No. 1 ("Defendant"), wrongfully denied his application for STD benefits. Currently pending before the Court are the parties' cross-motions for summary judgment. For the reasons discussed below, Plaintiff's motion is **GRANTED** and Defendant's motion is **DENIED**.

## II. BACKGROUND

A.  Terms of the Disability Plan

At all times relevant to this action, Plaintiff was a Testing Technician at Pacific Bell Telephone Company, and was thus a participant in the AT&T West Disability Benefits Program (Disability Plan). Administrative Record (AR) at 3. The AT&T West Disability Benefits Program is a component program of AT&T Umbrella Benefit Plan No. 1. Docket No. 37-2, *Joint Statement*

*of Undisputed Material Facts* (UMF), at No. 1. Under the terms of the Disability Plan, AT&T Services, Inc. – the Plan Administrator – has "sole and absolute discretion to interpret provisions of the Disability Plan, make findings of fact, determine the rights and status of participants and others under the Disability Plan and decide disputes under the Disability Plan." AR at 499, 510, 570; *see also* UMF at No. 2.

The Disability Plan further provides that the Plan Administrator may "delegate all or some of its responsibilities and powers as Plan Administrator to other individuals or entities." AR at 499. In 2001, AT&T Services, Inc. delegated its powers as Plan Administrator to Sedgewick Claims Management Services (Sedgewick). Hagestad Decl. at ¶ 2; AR 28-29. Thus, any claim for STD benefits under the Disability Plan is resolved by Sedgewick in its capacity as Plan Administrator. AR at 570; *see also* UMF No. 5-7.

Under the terms of the Disability Plan, a participant is eligible for STD benefits if they "have a sickness, injury or other medical, psychiatric or psychological condition that prevents [them] from engaging in [their] normal occupation or employment with the Participating Company, or such other occupation or employment as [they] may be assigned in accordance with the Participating Company's normal practices." AR at 548. To be deemed eligible, a claimant must provide, among other things, "objective medical information" that supports their claimed disability. AR at 47. Furthermore, Sedgewick may request, and condition approval of benefits upon, a claimant submitting to a third-party medical examination. AR at 548. Nevertheless, if a claimant submits a treating physician's opinion that does not provide "objective" and "measurable" medical findings, their documentation is usually found insufficient to support a claim for STD benefits under the Disability Plan. Hagestad Decl. at ¶ 8.

If a claim for STD benefits is initially denied by Sedgewick, a claimant may appeal to Sedgewick's Quality Review Unit (QRU) for a final determination of eligibility. AR 75-77. In considering an appeal, Sedgewick has authority to consider any and all evidence collected by Sedgewick's investigation, or provided by the claimant. AR at 563.

B. **Plaintiff's Relevant Medical History**

Plaintiff began working as a Testing Technician for AT&T West on December 7, 1999. AR at 87. A Testing Technician at AT&T West "handles the provisioning and the maintenance and repair modules by using a computer application or database pertaining to data or voice circuits including: teletype circuits, mobile radio circuits, multi-wire telephone circuits." AR at 93. In broader terms, a Testing Technician "reviews and interprets complex and special service orders, circuit diagrams and word document[s] . . . [and] perform all required pre-service tests in order to complete the provisioning of a circuit." *Id*. It is undisputed that this position does not require strenuous physical labor, and is performed entirely inside at a computer station for roughly eight hours a day.

Starting in August of 2012, Plaintiff began seeking treatment for an unusual numbness feeling that was spreading over the rear of his head. AR 108. Plaintiff reported that this feeling of numbness and an attendant ringing in his ears, was so "severe" as to make concentrating on anything impossible. *Id*. On August 23, 2012, Plaintiff was diagnosed with "numbness and tingling of skin"; "headache"; "tinnitus" (persistent ringing in the ear); and "migraine." AR at 110. For the next four months Plaintiff reported and sought extensive treatment for continued feelings of numbness and for worsening headaches. *See* AR at 115-213. In December of 2012, Plaintiff reported neck pain as well, and his treating physician suspected that his migraines and other symptoms might be the result of nerve root irritation in his neck. AR at 251-254. Shortly thereafter, Plaintiff underwent an MRI to investigate his neck pain. AR at 258. That MRI showed mild cervical spine degenerative disease, but did not reveal unusual nerve irritation. *Id*.

In February of 2013, Plaintiff reported and sought treatment for continued numbness and "cluster headaches." AR at 267. Plaintiff also reported that his symptoms were relieved by "fresh air." *Id*. On March 25, 2013, Plaintiff reported that he nearly fainted in connection with the onset of his symptoms, and sought further treatment. AR at 297.

On May 31, 2013, Plaintiff met with Dr. Lakshmi Mahendran for a second opinion regarding a previous diagnosis of "occipital neuralgia." AR at 339. In Dr. Mahendran's report, she notes that Plaintiff had, at that point, already been examined by two neurologists, undergone an MRI,

3

attempted to address his pain through pain management, tried occipital nerve blocks, acupuncture, and psychiatric assessment. *Id*. Further, Plaintiff had been prescribed several medications "including gabapentin, nortriptyline, [and] fluoxetine." *Id*. Dr. Mahendran concluded that, after examining Plaintiff, she had nothing new to add to the extensive investigation of Plaintiff's numbness and headaches. AR at 341. However, she noted that the etiology is likely "nerve related" and prescribed Plaintiff an anti-depressant medication, while discontinuing his prescriptions for: Ativan, Flexeril, Neurontin, Pamelor, and Imitrex. *Id*.

By July 19, 2013, Plaintiff followed up with Dr. Mahendran, reporting new tingling sensations in his extremities, and a worsening ringing in his ears. AR at 351. Mahendran prescribed Plaintiff a new medication and sent him to an audiologist. AR at 352.

On October 9, 2013, Plaintiff is diagnosed with "chronic daily headache" which are noted as having continued since August 23, 2012. AR at 365. Six days later, Plaintiff reported an inability to work because of "uncontrolled symptoms." AR at 372. Dr. Mahendran agreed to provide a verification of treatment so that Plaintiff could stay home from work for the next week to cope with symptoms. *Id*. Mahendran also prescribed Hyrocodone-Acetaminophen (Norco) for intense pain. *Id*.

Over the next two months, Plaintiff reported continually worsening headaches, and no meaningful relief from the newly prescribed Norco. AR at 375-417. At that point, the only known relief came from going outdoors to get fresh air or breathing oxygen from a tank while indoors. AR at 375. Plaintiff had two sessions of pain management counseling. AR at 382-417. In each session, the counselors noted that Plaintiff appeared to be in pain, and that this pain was noticeably reduced by going outside (AR at 384) or keeping an outside door open (AR at 390). By late November and early December, Plaintiff consistently rated his average experience of the pain attendant to his headaches as being a seven or eight – on a scale in which a score of ten is "the worst pain imaginable." *See* 382, 390, 417.

C.  <u>Plaintiff's Claim For Short Term Disability Benefits</u>

On November 26, 2013, Plaintiff commenced leave from work, while applying for STD benefits due to his chronic and severe headaches. AR at 3. In support of this application, Kaiser

Permanente – Plaintiff's treatment provider – sent Sedgewick two forms. The first form indicated: (1) Plaintiff was diagnosed with a headache on October 15, 2013; (2) Plaintiff had a similar condition in the past; (3) Plaintiff was still receiving care and was totally disabled from November 19th to December 23rd of 2013. AR at 61. The second form Kaiser provided contained Dr. Mahendran's recent progress notes, which indicated: (1) Plaintiff's headaches are continuing; (2) Plaintiff will be seen at the pain clinic; (3) Plaintiff reports he has not been exercising as much over the past year since the symptoms started. AR at 62.

Sedgewick referred Plaintiff's claim to an Independent Physician Adviser – Dr. Xico Roberto Garcia. Dr. Garcia called Dr. Mahendran, but did not speak with her during his review of Plaintiff's claim. AR at 69. Dr. Garcia's review of Plaintiff's claim documents led him to conclude that "[t]he objective information provided does not support functional impairment from [Plaintiff's] job duties." AR at 70.

On January 7, 2014 Plaintiff was informed over the phone that his claim was denied because it lacked sufficient medical information. AR at 14-15. A week later, Sedgewick sent Plaintiff a denial letter that further explicated the reason for his denial, and suggesting the type of information that could be provided to substantiate Plaintiff's claim. AR at 76 (listing "chart or progress notes, specialist's evaluations, physical therapy notes, diagnostic test results, operative report(s), or any other clear observable medical information you feel supports your inability to perform your job duties with or without reasonable restrictions").

On January 23, 2014 Plaintiff filed an appeal. AR at 83. In conducting the appeal, Sedgewick requested and received Plaintiff's medical records from August of 2012 to January 15, 2014. AR 98-432. Sedgewick provided these documents to three Independent Physician Advisors: (1) Jamie Lee Lewis, M.D., Board Certified in Physical Medicine and Rehabilitation and Board Certified Pain Medicine; (2) Michael A. Rater, M.D., Board Certified in Psychiatry, Member of American Board of Psychiatry and Neurology; (3) Charles Brock, M.D., Board Certified Neurology, Board Certified Pain Management, Assistant Professor of Neurology at the University of South Florida. AR at 451-468. All three of these doctors called Dr. Mahendran and requested a call back within twenty-four hours. AR at 452, 459, 465. None of the doctors received a call from Dr.

Mahendran within twenty-four hours, and thus none of them spoke with Dr. Mahendran before completing their assessment of Plaintiff's claim. *Id*. Similar twenty-four-hour-efforts were made to contact other treating physicians Plaintiff had seen – none were successful. *Id*. Thus, none of the doctors spoke with any of Plaintiff's treating physicians, examined Plaintiff themselves, or spoke with anyone that had examined Plaintiff at any point. *Id*.

Dr. Lewis's report concluded that Plaintiff was not disabled. AR at 456. Lewis's rationale was as follows:

> Based on the documentation provided for review, it is noted the patient was evaluated and treated on multiple occasions for ongoing numbness sensation to the occipital region. Examination does not identify any neurological deficits. [Range of motion] is within normal limits and without pain. Diagnostic studies do not identify any significant pathology. The clinical evidence does not reveal any observable objective findings or identify how Mr. Hegarty would be restricted from his regular occupation during the period under review.

*Id*.

Dr. Ratner also concluded Plaintiff was not disabled. AR at 463. Ratner's rationale was as follows:

> The claimant has CNS symptoms of numbness and pressure that do not have an entirely satisfactory neurological explanation, and there are questions raised about depression/anxiety causes from October/November 2012 forward in this case. Evaluation by a psychiatrist in February 2013 followed by sequential monitoring for mental health symptoms by Dr. Mahendran from May 2013 forward and by Dr. Moore from October 2013 forward do not support subjective complaints or objective findings such as mental status examination findings to support a mental health condition limiting or restricting his ability to work.

*Id*.

Dr. Brock concluded Plaintiff was not disabled. AR at 467. Brock's rationale was as follows:

> From a neurology perspective, the medical records indicate an ongoing chronic condition described as a head pressure sensation for which the claimant describes the pain as being intense and interfering with activities. However, the available medical records provided for review do not demonstrate any objective delineation of ongoing restrictions or limitations or demonstrated objective severity supporting restrictions and limitations from a vocational perspective. There are no

> demonstrated cognitive abnormalities, demonstrated focal neurologic abnormality or other signs or symptoms in association with the condition in support of delineating restrictions and limitations.

*Id*.

On March 4, 2014, Jennifer Nolley, on behalf of Sedgewick, sent Plaintiff a letter summarizing each of the above doctor's determinations, and informing him that his appeal was denied on the basis thereof. AR at 473.

### III. DISCUSSION

A. Legal Standard

If a denial of benefits is challenged under § 1132(a)(1)(B), it is to be reviewed under a *de novo* standard "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When a grant of discretionary authority is within the benefit plan, a denial of benefits is reviewed for an abuse of discretion. *Id.* However, that abuse of discretion standard is applied with a heightened level of skepticism when a plan administrator has a financial incentive to deny benefits. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 968 (9th Cir. 2006).

Here, it is undisputed that the Benefit Plan provides discretionary authority to the administrator, and thus an abuse of discretion standard applies. UMF at No. 11-12. Further, because Plaintiff does not establish a sufficient conflict of interest, financial or otherwise, on the part of Sedgewick – the delegated claim administrator – an enhanced skepticism is inappropriate. Accordingly, Plaintiff's denial of benefits is reviewed under an unaltered abuse of discretion standard.

Applying an abuse of discretion standard, a plan administrator's denial of benefits will not be disturbed unless it is unreasonable. *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011); *see also Conkright v. Frommert*, 559 U.S. 506, 508 (2010). To determine whether an administrator's denial is unreasonable, the Ninth Circuit has instructed that a court should consider "whether application of a correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.*

7

B.        Reasonableness of the Denial

In this case, Plaintiff challenges the reasonableness of Sedgewick's denial of his appeal. The gravamen of Plaintiff's argument is that it was unreasonable for Sedgewick to rely on the designations of its three independent physician advisors, because those designations of Plaintiff as "not disabled" were based on (1) irrelevant medical findings; and (2) Plaintiff's failure to provide "objective" or "measurable" evidence that he was disabled by his migraine pain. According to Plaintiff, this was unreasonable because neither migraines, their associated pain, nor the intensity of that pain is objectively measurable. Thus, according to Plaintiff, the administrator's denial was unreasonable because it relied on irrelevant medical findings and conditioned Plaintiff's claim for STD benefits on Plaintiff providing that which is impossible to provide – *i.e.* measurements of his migraine pain.

In response, Defendant primarily argues that the Benefit Plan *requires* "objective medical information" that indicates the severity of a claimant's disability and objectively evidences how the claimant is functionally impaired. According to Defendant, Sedgewick's denial of Plaintiff's claim under the Benefit Plan was reasonable because three different physicians found Plaintiff's claim did not provide "objective medical information" to substantiate his claims, and thus it did not meet the standard set forth in the Benefit Plan.

These arguments are similar to those addressed *Salomaa v. Honda Long Term Disability Plan*. In *Salomaa,* the Ninth Circuit addressed a challenge to the denial of benefits by a claimant who was diagnosed with chronic fatigue syndrome. 642 F.3d at 678. The ERISA plan administrator denied Salomaa's claim for benefits because it lacked "positive physical findings" – *e.g.* a positive blood test or other objective laboratory test that would indicate that the existence or severity of the claimant's condition. *Id*. The Ninth Circuit forcefully rejected this basis for denial. *See Salomaa*, 642 F.3d at 676-77 (explaining that administrator's reliance on findings that claimant's "thyroid, calcium, albumin, serum electrolytes and CBC results" were normal and that claimant did not have HIV or cancer, was not logical because those findings did not address the complained of condition – chronic fatigue syndrome); the *Salomaa* court reasoned that in cases where the claimant's disabling condition is not one for which the medical community can provide objective evidence, then an

administrator's "conditioning an award on the existence of evidence that cannot exist is arbitrary and capricious." *Id*. at 678.  The court emphasized that this holding was reinforced by the fact that (1) the plan administrator failed to conduct its own medical examination of the claimant; and (2) the administrator failed to address the contrary opinion of the claimant's treating physician. *Id*. at 676.

Here, Sedgewick denied Plaintiff's claim on the basis of their three reviewing doctors – Jamie Lee Lewis, Michael A. Rater, and Charles Brock.  Dr. Jamie Lee Lewis's written rationale for finding Plaintiff was not disabled notes the fact that Plaintiff was treated for "ongoing numbness sensation to the occipital region."  However, Lewis finds that Plaintiff's medical records do not indicate a disability because they do not evidence a "neurological deficit," a limitation of Plaintiff's range of motion, or "any observable objective findings" of how Plaintiff "would be restricted from his regular occupation."

Dr. Michael A. Rater offered no meaningful opinion, other than that Plaintiff's file did not indicate a "mental health condition limiting or restricting his ability to work."

Dr. Charles Brock's rationale for denying Plaintiff's claim recognizes an "ongoing chronic condition described as a head pressure sensation for which the claimant describes the pain as being intense and interfering with activities."  However, Brock find Plaintiff's medical records do not indicate a disability because the records "do not demonstrate any objective delineation of ongoing restrictions or limitations or demonstrated objective severity supporting restrictions and limitations." Further, Brock finds Plaintiff's medical records do not reflect "demonstrated cognitive abnormalities, demonstrated focal neurologic abnormality or other signs or symptoms."

Similar to the medical findings discussed in *Salomaa*, Sedgewick's doctors based their conclusion on the lack of objective proof which is not likely to exist for Plaintiff's migraine pain. Collectively, Sedgewick's doctors note that Plaintiff's medical records do *not* evidence:

- a "neurological deficit" (AR at 456);
- "observable objective findings" in how Plaintiff would be restricted;
- "a mental health condition" (AR at 463);
- "demonstrated cognitive abnormalities" (AR at 467);
- "demonstrated focal neurologic abnormality" (*Id*.).

9

These findings may rule out *other* conditions, but do not disprove the one at issue – migraine pain. As the court noted in *Ortega v. Chater*, 933 F. Supp. 1071, 1075 (S.D. Fla. 1996), "Since present-day laboratory tests cannot prove the existence of migraine headaches, as is also the case with many psychiatric and psychological impairments, [symptoms reported by the patient] are often the only means available to prove their existence." *See Salomaa*, 642 F.3d 670 (comparing migraines with chronic fatigue syndrome, noting "there were no physical findings for chronic fatigue syndrome except that the patient looked fatigued, just as there were no physical symptoms for migraine headache except that the patient would appear to be in pain.")

To be sure, the Sedgewick doctors appear to have also concluded that there was no objective proof of restrictions and limitations on Plaintiff's ability to work. In some situations, such as where there is a restricted range of movement of a lim or inability to lift, requiring proof of such limitation would not be arbitrary. But here, where the limitations or restricts are based on migraine pain, such limitations, because they are consequential to the pain, those restrictions likewise are likely to defy objective clinical proof.

Applying the holding of *Salomaa*, Sedgewick's reliance on the absence of medical evidence that cannot exist was "arbitrary and capricious," and thus "unreasonable." 642 F.3d at 678 (We now establish as holding . . . that conditioning an award on the existence of evidence that cannot exist is arbitrary and capricious."). Thus, the Court finds that Defendant abused its discretion in denying Plaintiff's appeal, because its only grounds for doing so were either illogical or unreasonable.

The Court also notes that both of the reinforcing factors enumerated in *Salomaa* are also present here. First, Sedgewick's denial did not address Dr. Mahendran's determination that Plaintiff was not able to perform his job when his migraine pain began peaking in intensity. *See* AR at 61. Second, Sedgewick chose not to have Plaintiff examined by its own physician despite it clear authority to do so. AR at 548. The presence of both of these factors counsels the direct application of *Salomaa* and thus further supports the determination that Sedgewick's denial was unreasonable. 642 F.3d at 678.

Furthermore, the administrative record is replete with references to the chronic and severe pain reported by Plaintiff, and his physicians crediting these reports in their own observations and treatment[1]. Plaintiff was not only prescribed a vast array of medications to address his condition, but he sought and received pain management counseling. AR at 548. As time passed, Plaintiff reported the migraine pain was increasing in intensity, and eventually his doctors deemed him disabled by the pain. *Id*. Outside of its defective reliance on the lack of "objective evidence," Sedgewick's denial did not provide any reason for rejecting Plaintiff's complaints of pain, or its implicit rejection of the opinions of his treating doctors who credited these complaints and made observations consistent therewith. Sedgewick's failure to provide such a reason further counsels a finding of unreasonableness. *See May v. AT & T Umbrella Ben. Plan No. 1*, 2012 WL 1997810, at *17 (N.D. Cal. June 4, 2012) aff'd, 584 F. App'x 674 (9th Cir. 2014) ("While a plan is not required to accept a claimants subjective complaints as to the degree of severity, it may be arbitrary and capricious to reject such complaints without a principled reason."); *see also James v. AT & T W. Disability Benefits Program,* 41 F. Supp. 3d 849, 879 (N.D. Cal. 2014) (same). Just as it is unreasonable to deny STD benefits because a claimant failed to provide evidence that is impossible to provide, it is also unreasonable to deny STD benefits without addressing the evidence of the complained of disability that *was* provided. *Id*.

Accordingly, for the reasons discussed, the Court **GRANTS** Plaintiff's motion and remands Mr. Hegarty's claim to the administrator for further proceedings. *See Pannebecker v. Liberty Life Assur. Co. of Boston*, 542 F.3d 1213, 1221 (9th Cir.2008) (explaining that "[w]here an

---

[1] *See* AR at 365-366 (Plaintiff is diagnosed with chronic daily headaches and migraines, noting their emergence in August of 2012); 372 (Plaintiff's intense and uncontrollable migraine pain becomes primary concern in seeking treatment; is prescribed narcotics); 375 (pain is described as "disabling" and is referred to a pain management service); 377-79 (attended pain management course and is prescribed anti-seizure medication); 382 (on a scale in which 0 = no pain and 10 = worst pain imaginable: Plaintiff reports average pain since October 8, 2013 as being a "5-6," with the worst moment being a "9"); 384-85 (Plaintiff pain management counselor reports that Plaintiff was "pleasant and cooperative" but "appeared uncomfortable" with a "blunted" affect and seemed to be suffering from "chronic pain"); *id* (Plaintiff's symptoms appear to be quelled by going outside on the patio, where Plaintiff "appeared much more relaxed"); 389-390 (Plaintiff reports average pain as having increased in intensity to a "6-7/10;" with constant pressure and acute onset of "sharp pain involving his temporal, temple, frontal area and also behind his eyes"); 417 (Plaintiff reports pain being at an "8/10" during pain counseling session; counselor "kept outside door open to [Plaintiff] could get more fresh air").

administrator's initial denial of benefits is premised on a failure to apply plan provisions properly, we remand to the administrator to apply the terms correctly in the first instance"); *see also Chronister v. Baptist Health*, 442 F.3d 648, 650 (8th Cir. 2006) (approving remand where initial denial was an abuse of discretion).

C. <u>Attorney's Fees and Costs Should Be Awarded</u>

Plaintiff requests an award of fees pursuant to 29 U.S.C. § 1132(g). In the Ninth Circuit, the discretionary decision to award fees is governed by the five factors set forth in *Hummell v. S. E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980). Those factors are:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1121 (9th Cir. 2010) (reaffirming the importance of the *Hummell* factors).

Here, based on the Court's finding that Defendant's denial was arbitrary and capricious the first, third and fifth factors are satisfied. The Court finds this sufficient, and finds an award of reasonable attorney's fees and costs appropriate. *See McElwaine v. U.S. West, Inc*., 176 F.3d 1167, 1173 (9th Cir.1999) ("The *Hummell* factors reflect a balancing and [a court] need not find that each factor weighs in support of fees"); *see also id*. ("When we apply the *Hummell* factors, we must keep at the forefront ERISA's purposes that 'should be liberally construed in favor of protecting participants in employee benefit plans").

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff's motion is **GRANTED** and Defendant's motion is **DENIED**. The Court **REMANDS** Plaintiff's claim to the administrator for further proceedings consistent with this order.

///

///

///

The parties shall meet and confer to address the amount of Plaintiff's reasonable attorney's fees and costs.  If no agreement is reached, Plaintiff shall file a motion within twenty-one (21) days of this order.  Defendant may file a response within fourteen (14) days thereafter.

This order disposes of Docket Nos. 36 and 38.

IT IS SO ORDERED.

Dated:  June 11, 2015

_____
EDWARD M. CHEN
United States District Judge

13